```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - X

KINGVISION PAY-PER-VIEW LTD.,
as Broadcast Licensee of the
November 13, 2004 Ruiz/Golota          REPORT AND
Program,                               RECOMMENDATION

                       Plaintiff,      CV 2005-2931 (ARR)(MDG)

            - against -

RIGOBERTO NUNEZ, Individually and
d/b/a MONUMENTO RESTAURANT a/k/a EL
MONUMENTO a/k/a MONUMENTO DE SANTIAGO
RESTAURANT a/k/a MONUMENT DE
SANTIAGO, and MONUMENTO RESTAURANT
a/k/a EL MONUMENTO a/k/a MONUMENTO DE
SANTIAGO RESTAURANT a/k/a MONUMENT DE
SANTIAGO,

                       Defendants.
- - - - - - - - - - - - - - - - - - X
```

GO, United States Magistrate Judge:

  Plaintiff Kingvision Pay-Per-View Ltd. ("plaintiff" or "Kingvision") brought this action under Title 47 of the United States Code alleging that Rigoberto Nunez ("Nunez") and Monumento Restaurant (collectively referred to as "defendants") violated sections 553 and 605 by intercepting and displaying to their customers, without plaintiff's authorization, a boxing match held on November 13, 2004. Complaint ("Compl.") (ct. doc. 1) at ¶¶ 1, 13, 15-16.

  After entry of default following defendants' failure to appear or otherwise defend in this action (ct. doc. 9), the

plaintiff's motion for default judgment was referred to me for a report and recommendation on damages and attorneys' fees. See ct. doc. 10.

PERTINENT FACTS

The facts pertinent to determination of this motion are undisputed and are set forth in the complaint; the August 9, 2005 affidavit of Donna K. Westrich, Vice-President of plaintiff ("Westrich Aff.") (ct. doc. 7-2); the October 26, 2005 affidavit of Julie Cohen Lonstein, Esq., counsel for plaintiff ("Lonstein Aff.") (ct. doc. 7-3); the November 24, 2004 affidavit of investigator James Russo ("Russo Aff.") (attached as Exhibit D to the Lonstein Aff.); and Plaintiff's Inquest Memorandum dated October 26, 2005 ("Pl. Mem.") (ct. doc. 7-4). Defendants did not file any opposing papers.

Plaintiff is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Deerfield Beach, Florida. Compl. at ¶ 5. Defendant Monumento Restaurant is alleged to be a business entity with its principal place of business located at 3019 Atlantic Avenue, Brooklyn, New York. Id. at ¶ 7. Defendant Nunez resides in the State of New York. Id. at ¶ 6.

Plaintiff owns the rights to broadcast via closed-circuit television and satellite the championship boxing match between John Ruiz and Andrew Golota and all undercard bouts held on

November 13, 2004 (the "boxing match"). Id. at ¶ 12; Westrich Aff. at ¶ 3, Exh. A. The transmission of the match was broadcast by satellite uplink and subsequent cable transmission and was electronically coded or "scrambled." Compl. at ¶ 12. Plaintiff then retransmitted the signals to subscriber establishments, enabling them to view only those broadcasts for which they had paid. Id. at ¶¶ 13, 15-16.

Defendants did not contract with plaintiff and thus were not authorized to receive and publish the boxing match. Westrich Aff. at ¶ 6. As set forth in his affidavit, investigator James Russo observed the unauthorized public showing by Monumento Restaurant of the boxing match to 8 customers. Russo Aff. at 2. Entering the establishment at approximately 9:54 p.m. on November 13, 2004, investigator Russo observed, inter alia, the eleventh round of an undercard bout between Evander Holyfield and "Larry McDonald [sic]." Id. at 1.

Plaintiff served the defendant Monumento Restaurant on July 8, 2005, by personally serving an officer of the entity, defendant Nunez, in accordance with Fed. R. Civ. P. 4(h)(1). See ct. doc. 4. On the same date, plaintiff also served the individual defendant Nunez personally. See ct. doc. 3. Since the Federal Rules of Civil Procedure permit personal service upon business entities by service upon an officer and personal service upon individuals, I find that service was properly effectuated upon both defendants. See Fed. R. Civ. P. 4(e)(2), 4(h)(1).

Following defendants' failure to answer the complaint, plaintiff filed a motion for judgment by default on November 2, 2005. See ct. doc. 7.

DISCUSSION

I. Legal Standards Governing Default

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir.), cert. denied., 506 U.S. 1080 (1993); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct; that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged. Greyhound, 973 F.2d at 159. The movant need prove "only that the compensation sought relate to the damages that naturally flow from the injuries pleaded." Id.

The court must ensure that there is a reasonable basis for the damages specified in a default judgment. Actual damages or statutory damages may be assessed. In determining damages not susceptible to simple mathematical calculation, Fed. R. Civ. P. 55(b)(2) gives a court the discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir.), cert. denied, 503 U.S.

1006 (1992) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)).  The moving party is entitled to all reasonable inferences from the evidence it offers.  Au Bon Pain, 653 F.2d at 65 (citing Trans World Airlines, Inc. v. Hughes, 308 F. Supp. 679, 683 (S.D.N.Y. 1969)).

II. Determination of Damages

   A. Liability

   Both sections 553 and 605 of Title 47 prohibit the unauthorized reception of cable programming.  Section 553(a)(1) specifically applies only to cable transmissions and provides that, "[n]o person shall intercept or receive ... or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."  Section 605(a) generally provides that, "[n]o person not being authorized by the sender shall intercept any radio communication ... or assist in receiving any interstate or foreign communication by radio and use such communication for his own benefit or the benefit of another not entitled thereto."

   The Second Circuit in Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 130 (2nd Cir.), cert. denied sub nom Noel v. Int'l Cablevision, Inc., 519 U.S. 929 (1996)("Sykes II"), held that section 605 applies to "the interception of cable-borne, as well as over-the-air, pay television" where cable-borne transmissions originate as satellite transmissions.  See also

Cmty. Television Sys., Inc. v. Caruso, 284 F.3d 430, 435 (2d Cir. 2002). When certain television programming is transmitted or intercepted over both cable and satellite mediums, both sections 553 and 605 apply. Id.

Plaintiff's submissions establish that defendants violated sections 553 and 605 of Title 47 by intercepting and receiving the boxing match without authorization. Compl. at ¶¶ 15-16; Russo Aff. at 1-2. Plaintiff had the right to distribute the boxing match, which originated via satellite uplink. Compl. at ¶ 12. Investigator Russo observed the boxing match being displayed to customers at Monumento Restaurant, even though defendants had not contracted with plaintiff to do so. Nugnes Aff. at 1-2. However, an action cannot be maintained against a business operating under a trade name. See Ragin v. Harry Mack Lowe Real Estate Co., Inc., 126 F.R.D. 475, 480 (S.D.N.Y. 1989); Provosty v. Lydia E. Hall Hosp., 91 A.D.2d 658, 659, 457 N.Y.S.2d 106 (2d Dep't 1982); Marder v. Betty's Beauty Shoppe, 38 Misc.2d 687, 687-88, 239 N.Y.S.2d 923, 924 (2d Dep't 1962). In paragraph 7 of the complaint, plaintiff concedes that Monumento Restaurant "is a business entity the exact nature of which is unknown." Compl. at ¶ 7. Moreover, based on this Court's own search of the records of the New York Secretary of State, there is no corporation or partnership with the name Monumento Restaurant nor with any of the aliases alleged by plaintiff. On the other hand, an action can be maintained against an individual doing business

under a trade name.  See Ragin, 126 F.R.D. at 480; Provosty, 91 A.D.2d at 659; Marder, 38 Misc.2d at 687-88.  Nunez is named in the caption of the complaint both individually and doing business as Monumento Restaurant.  Consequently, this Court finds that only defendant Nunez's unlicensed reception and exhibition of the transmissions violated sections 553 and 605 of Title 47.

   B.   Damages

Plaintiff requests damages pursuant to section 605, rather than section 553.  See Pl. Mem. at 5.  Where a defendant is liable under both sections 553 and 605, the plaintiff is entitled to have damages awarded under section 605 because it provides greater recovery than does section 553.  See Sykes II, 75 F.3d at 127; Entm't by J & J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., No. CV-01-3945, 2002 WL 2022522, at *3 (E.D.N.Y. May 21, 2002) (recovery under both sections 553 and 605 is impermissible).

Section 605 allows plaintiff to elect to recover either actual damages and lost profits, or statutory damages.  See 47 U.S.C. § 605(e)(3)(C)(i).  Section 605(e)(3)(C)(i)(II) authorizes statutory damages of no less than $1,000 and no more than $10,000 for each violation of section 605(a).  In addition, section 605(e)(3)(C)(ii) vests the court with the discretion to increase the award of damages where "the court finds that the violation was committed willfully and for the purposes of direct or

indirect commercial advantage or private financial gain."  The court is authorized to award enhanced damages of up to $100,000 for each violation of willfulness.  Section 605(e)(3)(C)(i)(II) vests the court with the discretion to determine the amount of statutory damages, authorizing the court to award an amount "as the court considers just."  See Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993); see also Joe Hand Promotions, Inc. v. Nekos, 18 F. Supp. 2d 214, 217 (N.D.N.Y. 1998) (the court has "discretion to adjust the amount awarded to the plaintiff").

In exercising such discretion, courts should be mindful of the difficulty in detecting such violations and the widespread problem of piracy.  See Cablevision Sys. New York City Corp. v. Faschitti, No. 94 Civ. 6830 (DC), 1996 WL 48689, at *2 (S.D.N.Y. Feb. 7, 1996); see also Sykes II, 75 F.3d at 132 (quoting legislative history).  The court should therefore grant damages in an amount which achieves the deterrent purposes of the statute.  See Cablevision Sys. New York City Corp. v. Lokshin, 980 F. Supp. 107, 113 (E.D.N.Y. 1997).

Plaintiff seeks to recover statutory damages in the amount of $2,500 and enhanced damages of $7,500 for defendants' willful violation of section 605.  See Pl. Mem. at 6-7.  Some courts presented with sufficient evidence indicating the number of patrons present at the time of the unauthorized programming have employed a formula that multiplies that number by a dollar

amount, usually based on the customary charge for the event in question.  See, e.g., Mama Zee, 2002 WL 2022522, at *10 (awarding $50 per patron); Time Warner Cable of New York City v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999) (same); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (same).  However, since the $50 per patron formula has been in use for more than ten years, $100 per patron may be the more appropriate measure.  See Entertainment by J&J Inc. v. Miraldo Rest., Inc., No. 01 CV 10832, 2003 U.S. Dist. LEXIS 11361, at *11 (S.D.N.Y. Apr. 23, 2003).

Other courts have simply assessed a flat damages amount per violation.  See Joe Hand Promotions, Inc. v. Hernandez, No. 03 Civ. 6132, 2004 U.S. Dist. LEXIS 12159 (S.D.N.Y. June 30, 2004) (awarding $1,000 statutory damages and $1,500 enhanced damages for one-time exhibits of boxing match to about 20 customers); Garden City Boxing Club, Inc. v. Ayisah, 02 Civ. 6673, 2004 U.S. Dist. LEXIS 7867 (S.D.N.Y. Apr. 28, 2004) (awarding $3,000 statutory damages and $5,000 enhanced damages for one-time exhibit of boxing match to 60 customers); Kingvision Pay-Per-View, Ltd. v. Jasper Grocery, 152 F. Supp. 2d 438 (S.D.N.Y. 2001) (awarding $5,000).

Recently, a number of judges in this district have awarded damages based on the number of patrons or the capacity of an establishment multiplied by the residential fee for a pay-per-

view broadcast.  See, e.g., Garden City Boxing Club, Inc. v. Bello, No. CV-05-1300, 2005 WL 2496062, at *3 (E.D.N.Y. Sept. 20, 2005) (recommending statutory damages based on $54.95 residential rate for each of the 40 patrons who could have viewed the prize fight based on the establishment's capacity).  Courts using the residential fee reason that this is the amount each patron would have paid to view the boxing match from home had he or she not had access to a broadcast at the establishment at issue.  See Bello, 2005 WL 2496062, at *3.  Plaintiff states that the "purchase of a pay-per-view broadcast for the event at the residential price" would cost "25.00 and $50.00."  See Westrich Aff. at ¶ 10(B).

Plaintiff has submitted evidence that 8 customers were present at Monumento Restaurant when investigator Russo observed the match being illegally displayed during the eleventh round of an undercard bout.  See Russo Aff. at 2.  Investigator Russo described the layout of the establishment as a "restaurant style store with tables and chairs" and estimated that this establishment could accommodate approximately 25 people.  See Russo Aff. at 1-2.  If this Court multiplies the residential rate of $50.00 by 25, the seating capacity of the restaurant, the amount of damages would be $1,250.00.  If this Court used the $100 per patron viewing the match, the amount of damages would be $800, less than the statutory minimum.  However, since the investigator apparently was at the Monumento Restaurant before

the broadcast of the main match, more patrons may have entered the premises later.  I thus recommend that the Court award statutory damages of $1,250 against defendant Nunez.

Further, I recommend that the Court award enhanced damages against defendant Nunez.  Defendants who intercept signals and broadcast programming without authorization "in a place of business where certain events are shown to the public" are generally held to have acted willfully and for purposes of commercial advantage.  <u>Am. Cablevision of Queens v. McGinn</u>, 817 F. Supp. 317, 320 (E.D.N.Y. 1993) (citing <u>Cablevision Sys. Corp. v. Maxie's North Shore Deli Corp.</u>, No. 88 CV 2834, 1991 WL 58350 (E.D.N.Y. Mar. 20, 1991)).  Courts consider a variety of factors to determine whether a defendant's willful conduct warrants enhanced damages.  These factors include:  "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; [and] defendant's charging a cover charge or charging premiums for food and drinks."  <u>Kingvision Pay-Per-View, Ltd. v. Recio</u>, No. 02 Civ. 6583, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003) (internal citations omitted).

The undisputed facts presented by plaintiff in its complaint and the supporting affidavits clearly establish that Monumento Restaurant is a commercial establishment that publicly displayed the Ruiz/Golota boxing match to customers without authorization.

Compl. at ¶¶ 15-16; Russo Aff. at 1-2. Plaintiff's submissions support the inference that on November 13, 2004, Monumento Restaurant displayed the match for commercial gain in order to attract customers or retain customers who would patronize defendants' restaurant. Thus, I find that defendant Nunez willfully acted to intercept the match without authorization and recommend enhanced damages equal to three times the amount of damages awarded under section 605(e)(3)(C)(I). See Kingvision Pay-Per-View, Ltd. v. Echeverria, No. 06 CV 1266, 2007 WL 595025, at *4 (E.D.N.Y. Feb. 22, 2007); Joe Hand Promotions, Inc. v. West, No. CIV.A.99-0983E(M), 2000 WL 1610666, at *2 (W.D.N.Y. Oct. 25, 2000) (where no special circumstances are shown, a trebling of damages is a "reasonable deterrent against future violations") (quoting Googies Luncheonette, 77 F. Supp. 2d at 490-91).

    C.   <u>Injunctive Relief</u>

Plaintiff also seeks permanent injunctive relief against defendants pursuant to 47 U.S.C. § 605(e)(B)(i). See Pl. Mem. at 8. "A court may 'issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction.'" Dunkin' Donuts Inc. v. Peter Romanofsky, Inc., No. CV-05-3200, 2006 WL 2433127, at *6 (E.D.N.Y. Aug. 8, 2006) (quoting King v. Nelco Indus., Inc., No. 96-CV-4177, 1996 WL

629564, *1 (E.D.N.Y. Oct. 23, 1996)).  Under both section 553(c)(2)(A) and section 605(e)(3)(B)(i), a court may grant an injunction as necessary to prevent further violations of either section.

Even where injunctive relief is available under the applicable statute, the party seeking an injunction must demonstrate irreparable harm and the threat of a continuing violation.  N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 43 (2d Cir. 1999); Barrera v. Brooklyn Music, Ltd., 346 F. Supp. 2d 400, 412-13 (S.D.N.Y. 2004); Boisson v. Banian Ltd., 280 F. Supp. 2d 10, 15 (E.D.N.Y. 2003).  And, in any event, equitable remedies are discretionary.  See Tennessee Valley Auth. v. Hill, 437 U.S. 153, 193 (1978).  Here, plaintiff has shown only a single violation of the statute and has not established that the monetary damages recommended above will be insufficient to deter future violations.  Accordingly, I recommend denying plaintiff's request for a permanent injunction.

 D.   Attorneys' Fees

Plaintiff seeks to recover its attorneys' fees and costs totaling $1,768.75.  Lonstein Aff. at ¶ 3.  Title 47 U.S.C. § 605(e)(3)(B)(iii) mandates that reasonable attorneys' fees and costs be awarded to a prevailing aggrieved party.  Int'l Cablevision, Inc. v. Sykes, 997 F.2d 998, 1009 (2d Cir. 1993) ("Sykes I").  The standard method for determining the amount of

reasonable attorneys' fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," or the lodestar.  Hensley v. Eckerhart, 461 U.S. 424, 434 (1983); Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989), cert. denied, 496 U.S. 905 (1990).

In reviewing a fee application, the district court must examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case.  See Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir. 1994); DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir. 1985).  If any expenditure of time was unreasonable, the court should exclude these hours from the lodestar calculation.  See Hensley, 461 U.S. at 434; Lunday, 42 F.3d at 133.  The court should thus exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims."  Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).  A party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records.  New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983).

The reasonable hourly rates should be based on "the prevailing marketplace rates in the community for similar services by a lawyer of reasonably comparable skill, experience,

and reputation." Cruz v. Local Union No. 3 of IBEW, 34 F.3d
1148, 1159 (2d Cir. 1994). Determination of the prevailing
market rates may be based on evidence presented or a judge's own
knowledge of hourly rates charged in the community. Chambless,
885 F.2d at 1059. The Court in Rotella found that "the prevalent
market rate in this district is in the range of $200 to $250 for
partners and between $100 and $200 for junior and senior
associates." Rotella v. Bd. of Educ. of City of New York, No. 01
CIV. 0434, 2002 WL 59106, at *2-*3 (E.D.N.Y. Jan. 17, 2002)
(citations omitted) (finding that rate of lead counsel in a small
firm of $225 per hour and rates of $135 and $100 per hour for
junior counsel were reasonable); see also SEC v. Goren, 272 F.
Supp. 2d 202, 207 (E.D.N.Y. 2003).

Plaintiff seeks to recover $968.75 in attorneys' fees.
Lonstein Aff. at ¶ 4.[1] The amount of time spent by the attorneys
and paralegals on work relating to the defaulting defendants and
their billing rates are summarized below:

| Attorney/ Paralegal | Time | Rate | Amount |
|---|---|---|---|
| Atty | 4.00 | $200.00 | $800.00 |
| Para | 2.25 | $75.00 | $168.75 |
| **Total Fees:** | | | **$968.75** |

After reviewing plaintiff's submissions, I find that

---

[1] The Notice of Motion for Default Judgment (ct. doc. 7) and
plaintiff's memorandum of law (ct. doc. 7-4) request attorneys'
fees and costs of $884.37.

plaintiff has provided sufficient information to explain the time spent by its attorney staff and that the time spent on this case is reasonable in light of the work completed. Although the rate sought by plaintiff for attorney time may be reasonable, plaintiff fails to provide any information identifying the attorneys who worked on this matter and the experience of the attorneys. If the work is performed by an associate with only a few years of experience, then I would find the $200 per hour rate unreasonable based on my knowledge of prevailing rates for such matters in New York. See Rotella, 2002 WL 59106, at *2-3; see also Googies Luncheonette, Inc., 77 F. Supp. 2d at 491. Furthermore, this Court questions the accuracy of the amount of time claimed even though the amount claimed by plaintiff is not substantial. For example, plaintiff's counsel seeks compensation for 1.5 hours of work in drafting the complaint, an amount that plaintiff's counsel has claimed in a large number of cases brought for the theft of programming, as observed by a number of my colleagues. Between April 14, 2005 and November 10, 2005, plaintiff filed at least 10 other actions in this district against various commercial establishments for unauthorized display of the Ruiz/Golota match.[2] In eight of those cases, the defendants defaulted and plaintiff's counsel sought compensation

---

[2] See CV05-4556; CV05-2935; CV05-2930; CV05-2932; CV05-2934; CV05-2938; CV05-3682; CV05-5368; CV05-1928; and CV05-2659.

-16-

for 1.5 hours for drafting the complaint.[3]  See also Batista, 2005 WL 2999427, at *6-*7 (noting that same plaintiff's counsel affirmed that she expended 2.5 hours drafting complaint).  Given the substantial similarity of these cases, it is reasonable to assume that some portions of plaintiff's submissions will be virtually identical.  See id.  While this Court understands the difficulty plaintiff may have in enforcing its licensing rights against widespread theft of programming and its desire to do so economically, the plaintiff has failed to meet its burden of providing sufficiently detailed records.  See New York State Ass'n for Retarded Children, Inc., 711 F.2d at 1147-48.  Given the uncertainty over the propriety of the rates claimed and concern over the accuracy of time claimed, I recommend that plaintiff's request for fees be reduced by 20% for attorney time to $640, for a total fee award of $808.75, including paralegal time.  See Luciano v. Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997) (permitting courts to make an across-the-board reduction in the amount of hours for unreasonable claims).

Pursuant to section 605(e)(3)(B)(iii), plaintiff also seeks $800 in costs.  In support of that request, plaintiff has submitted an affidavit from Julie Cohen Lonstein, attesting to

---

[3] See CV05-2930; CV05-2932; CV05-2934; CV05-2938; CV05-3682; CV05-5368; CV05-1928; and CV05-2659.

the payment of $350 to the investigator for his services.[4]
Westrich Aff., Exh. E; Lonstein Aff. at ¶ 3.  In addition,
plaintiff seeks reimbursement for filing fees of $250 and service
of process fees in the amount of $200, which I find to be
reasonable.  Lonstein Aff. at ¶ 3.

This Court agrees that plaintiff may be entitled to recover
costs incurred for the investigator since the investigation
clearly was "incidental and necessary" to the prosecution of this
case.  See Amato v. City of Saratoga Springs, 991 F. Supp. 62, 68
(N.D.N.Y. 1998) (citing Northcross v. Bd. of Educ., 611 F.2d 624,
639 (6th Cir. 1979)); see also Kingvision Pay-Per-View, Ltd. v.
Autar, 426 F. Supp. 2d 59, 65-67 (E.D.N.Y. 2006); Rolex Watch
U.S.A., Inc. v. Brown, No. 01 CIV. 9155 (JGK)(AJP), 2002 WL
1226863, at *4 (S.D.N.Y. June 5, 2002) (awarding investigative
fees in trademark infringement action); Int'l Cablevision, Inc.
v. Noel, 982 F. Supp. 904, 918 (W.D.N.Y. 1997) (acknowledging
investigative fees recoverable as a cost under § 605); Video
Aided Instruction, Inc. v. Y & S Express, Inc., No. 96 CV 518,
1996 WL 711513, at *6 (E.D.N.Y. Oct. 29, 1996) (awarding fees);
Maywalt v. Parker & Parsley Petroleum Co., 864 F. Supp. 1422,
1439 (S.D.N.Y. 1994) (approving $75 rate for investigators as
within "the reasonable range of rates" paid in the district).
However, since the investigator arrived at the defendants'

---

[4] The bill submitted from Signal Auditing, Inc. lists a charge of $450.  See Westrich Aff., Exh. E.

premises at 9:54 p.m. and left at 9:58 p.m., I find $350 in investigative fees to be excessive and recommend that this Court award only $100 in investigative costs.[5] Although the investigator's invoice indicates that plaintiff was charged $450 for investigative fees, there is no evidence as to the investigator's hourly rate or how the amount charged was calculated. The amount awarded of $100 is generous considering the investigative work required in this case.

I thus recommend that the Court award costs of $250 for the Court's filing fee, $200 for service of process fees and $100 for investigative fees, for a total of $550 in costs.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that this Court award plaintiff $1,250 in statutory damages, $3,750 in enhanced damages, $808.75 in attorneys' fees and $550 in costs, for a total judgment of $6,358.75 against defendant Nunez.

A copy of this report and recommendation is being filed electronically on this date and sent via overnight delivery to defendants. Any objections must be filed with the Clerk of the Court, with a copy to the Honorable Allyne R. Ross, the

---

[5] Moreover, based on this Court's knowledge from other cases and from conferring with colleagues, investigators hired by plaintiff (as well as other licensors of rights to certain programming broadcast via satellite) visit a number of establishments during the night that a particular boxing match is broadcast. See ct. doc. 13 at 18-19 in Garden City Boxing Club, Inc. v. Rojas, CV 2005-1047 (DGT) (MDG) (E.D.N.Y. Oct. 12, 2006).

undersigned and the other party, on or before September 18, 2007. Failure to file timely objections may waive the right to appeal the District Court's Order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

**SO ORDERED.**

Dated:     Brooklyn, New York
           August 31, 2007

                                    /s/
                              MARILYN D. GO
                              UNITED STATES MAGISTRATE JUDGE